IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ERICK TORRES AND GLORIA S. BURGOS ROMÁN**,<br><br>Plaintiffs,<br><br>v.<br><br>**NBC UNIVERSAL, INC., COMCAST CORPORATION,**<br><br>Defendant. | CIVIL NO. 10-1793<br><br>Declaratory Judgment; Constitutional Rights violation; Slander and Defamation; and Damages<br><br>Plaintiffs demand a Trial by Jury |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs Erick Torres and Gloria S. Burgos Román, through the undersigned attorneys and very respectfully aver and pray as follows:

### JURISDICTION AND VENUE

1. This Honorable Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, since it is an action for violation of Plaintiffs rights to self image and defamation, pursuant to Section 8 of the Constitution of the Commonwealth of Puerto Rico, P.R. Const. Art. II § 8; the Libel and Slander Act of 1902, 32 P.R. Laws Ann. §§ 3141-3149; and, Article 1802 of the Puerto Rico Civil Code, 31 P.R Laws Ann. § 5141; and, since the controversy arises between citizens of different states, and the amount in controversy for each cause of action exceeds $75,000.00, exclusive of costs and interests.

2. Venue lies properly in this United States District Court for the District of Puerto Rico, since the facts alleged in the Complaint occurred in Puerto Rico, and the controversy is

between two citizens of the Commonwealth of Puerto Rico and two corporations; one with citizenship from Delaware and New York and the other with citizenship from Pennsylvania.

## THE PARTIES

3.      Plaintiff Erick Torres is of legal age, married, a Reverend and resident of Trujillo Alto, Puerto Rico, (hereinafter referred to as "Torres").  Plaintiff Torres is the principal Reverend of the Church known as *La Iglesia Pentecostal Cristo La Roca*, which he founded almost a quarter of a century ago (hereinafter referred to as, the "Church").  In addition to having religious motives, Plaintiff Torres's Church is also dedicated to providing social and community services, such as building houses for those injured by natural or other type of catastrophes; helping the elderly, the homeless and others in need.  Plaintiff Torres is a citizen of Puerto Rico.

4.      Plaintiff Gloria S. Burgos Román is legally emancipated, married, property owner, and resident of Trujillo Alto, Puerto Rico (hereinafter referred to as "Burgos").  Plaintiff Burgos is married to Plaintiff Torres.

5.      Defendant NBC Universal, Inc., is, upon information and belief, a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of New York, (hereinafter referred to as "NBC").  NBC is, upon information and belief, the parent company and owner of various subsidiaries.  One of its subsidiaries is Telemundo of Puerto Rico, LLC., (hereinafter referred to as "Telemundo") which owns the television station in San Juan, Puerto Rico (WKAQ-Channel 2) that slandered and defamed Plaintiffs and their reputation, and violated Plaintiffs' constitutional rights.  NBC instructs and establishes the policy, guidelines, and principles of all its television stations and belonging to all its subsidiaries and further provides training for, supervises, and oversees the proper implementation of the

same.[1]  NBC has full control, domination and tutelage over Telemundo on issues regarding privacy considerations in their broadcasting, the broadcasting of libelous and defaming information, among others.  NBC's principal place of business is in New York City, New York.

6. Defendant Comcast Corporation is, upon information and belief, a corporation organized under the laws of the State of Pennsylvania, with its principal place of business in Pennsylvania, (hereinafter referred to as "Comcast").  Upon information and belief Comcast acquired NBC, assuming all rights and obligations of NBC, and also assuming all NBC policies, guidelines, and liabilities.  Comcast is, upon information and belief, the parent company and owner of various subsidiaries, one of which owns a television station in San Juan, Puerto Rico (WKAQ-Channel 2) which slandered and defamed Plaintiffs and their reputation, and violated Plaintiffs' constitutional rights.  Comcast instructs and establishes the policy, guidelines, and principles of all its televisions stations and belonging to all its subsidiaries and further provides training for, supervises and oversees the proper implementation of the same.  Comcast has full control, domination and tutelage over Telemundo on issues regarding privacy considerations in their broadcasting, the broadcasting of libelous and defaming information, among others.  Comcast's principal place of business is in Philadelphia, Pennsylvania.

**FACTS COMMON TO ALL CAUSES OF ACTION**

7. On and around June 7, until July 21, 2010, NBC and Comcast subsidiary, Telemundo, televised in its weekday, daily timeslot between 6:00 p.m. and 7:00 p.m. a program

---

[1] For example, NBC's News Policies and Guidelines provide that "[t]he standards for disclosing private information are stricter for a private citizen than for a celebrity or other newsworthy figure.  It can be a violation of someone's privacy to report certain types of personal information about them, even if those facts are true. … Please consult the NBC Law Department and the News Director for additional guidance regarding these matters."  Upon information an belief these policies and guidelines are still in place..

known as "*Dando Candela*" (*Heating Things Up* (our translation)) which broadcasts celebrity and public figure gossip, and often including sensationalist material.

8. Around that same date, on June 5, 2010, Plaintiff Torres and Plaintiff Burgos got married. Plaintiff Burgos was nineteen years old when she got married. She had been legally emancipated before her marriage, pursuant to Puerto Rico Law, 31 P.R. Laws Ann. §§ 911-916. Plaintiff Torres is fifty-one years old. Admittedly, there is a significant age difference between Plaintiffs, but there is no legal or any other type of provision, norm or rule against their marital union. Their marriage was voluntary and consensual and also sanctioned by Plaintiff Burgos's parents.

9. The Constitution of the Commonwealth of Puerto Rico protects Plaintiffs' private life against abusive attacks and the type of character assassination they suffered. To that effect, Section 8 of the Bill of Rights of the Constitution of the Commonwealth of Puerto Rico provides, "*Every person has the right to the protection of law against abusive attack on his honor, reputation and private or family life*." *See* P.R. Const. Art. II § 8.

10. During the *Dando Candela* programs which aired on June 7, 9, and 15, and then in July 21, 2010, there were segments during each program dedicated to slandering and defaming Plaintiffs. Specifically, some of the hosts and/or characters of the program, Mr. Harold Rosario and Mr. Leo Fernández III, made slanderous, derogatory, and defamatory comments against Plaintiffs and against Co-Plaintiff Burgos's parents regarding Plaintiffs' marriage and private and family life. Such comments were made with the intention of instilling in the minds of the public and in the minds of Plaintiff Torres's Church congregation, hatred, contempt, despise, and disbelief and to dishonor, humiliate, and discredit Plaintiffs in the public opinion, depriving them of the benefit of public confidence and social interaction.

11. These vicious and ill-intended comments caused damages to Plaintiff Torres who is the principal Reverend of his Church. Plaintiff Torres has dedicated his life, time, and efforts to build and strengthen his Church. With love and dedication he has earned the trust and respect of his religious congregation and his community. The defaming comments were like an explosion aimed at destroying and discrediting his honor and reputation. The defaming comments were meant to inculcate a sprouting seed of hate and disbelief within Torres's parishioners and the general public; harming not only Plaintiff Torres, but his Church, as well.

12. The ill-intended comments also caused damages to Plaintiff Burgos who has always led a private life outside of the public spotlight, and was suddenly thrown into the limelight based on cruel lies and malicious comments about her private decisions and personal life.

13. The comments against Plaintiffs were made with the knowledge that they were false and defamatory, and with the willful and wanton intention of infringing on their constitutional rights to lead a life free of abusive attacks against their honor, reputation and their private and family life, and with the willful and wanton intention to vilify, humiliate, and defame Plaintiffs.

14. Some of the defaming comments were broadcast live on television and others had been previously recorded with the intention to be aired during the program. Thus, the nature, content and intentions of the same were known and endorsed by Defendants NBC and Comcast.

15. Defendants sanctioned the broadcasting of defaming comments against Plaintiffs in the aforementioned *Dando Candela* programs. Defendants, know, and irresponsibly endorse the nature and purpose of the program. Defendants, through Mr. Harold Rosario and Mr. Leo Fernández III, commented on the age difference between the Plaintiffs and stated that they had

5

been in a romantic relationship since Plaintiff Burgos was around nine (9) years old, and that they had been living together for many years; thereby accusing Plaintiff Torres of committing various criminal offenses under Puerto Rico Law against his wife, Plaintiff Burgos. Such crimes include sexual assault, lewd acts, and statutory rape. Defendants further implied that Plaintiff Burgos's parents had "given" her to Plaintiff Torres allowing him to commit such criminal acts against Plaintiff Burgos. The defamatory comments also attacked Plaintiff Torres's Church and religious congregation.

16. The malicious and defamatory comments stated on the June 7th program included, among others, the following[2]:

    a. *"…he* (referring to Plaintiff Torres) *got married this Saturday with the girl* (referring to Plaintiff Burgos) who *apparently is four months pregnant."* See **Exhibit A**, Certified Translation of the Transcript of the pertinent parts of the June 7, 2010 program, page 2, lines 12-14;

    b. *"Poor bride they are moving her like a stolen and covered pig, what are they trying to hide?"* See **Exhibit A**, page 4, lines 13-15;

    c. *"But the reverend prefers to hide things. Is this the house of God or the house of Reverend Ricky and his opulence?"* See **Exhibit A**, page 4, lines 24-26;

    d. *"I'm going to clarify to you who this scoundrel is"* (referring to Plaintiff Torres). *See* **Exhibit A**, page 5, lines 15-16;

    e. *"Tell me whether or not you fell in love with that girl when she was nine years old. And she was under the custody of some ministers that were friends of yours who are such scoundrels that they allowed that."* See **Exhibit A**, page 5, lines 20-24;

---

[2] Attached as Exhibit A is the complete translation of the transcript of the pertinent parts of the June 7, 2010 program, which is included by reference pursuant to Fed. R. Civ. P. 10(c).

    f. *"The girl, you have allegedly been living with her for a long time, and you know what? You did it because you wanted to wait until she was 18 years old."* See **Exhibit A**, page 5, line 25 to page 6, line 2.

 17. Plaintiffs respectfully request that this Honorable Court take judicial notice of the June 7, 2010, *Dando Candela* program, pursuant to Fed. R. Evd. 201.

 18. Given these poisonous comments, which reached the whole Island of Puerto Rico, some parts of the United States, and the rest of the world by internet, Plaintiff Torres tried to mitigate the damages to his self-image and reputation and his wife's, Plaintiff Burgos, self-image and reputation by agreeing to appear by telephone interview in the television program "*Superexclusivo*" de "*La Comay*", hosted by Mr. Antulo "Kobbo" Santarrosa and Mr. Héctor Travieso. In said program, which aired on June 8, 2010, Plaintiff Torres stated that the comments regarding him and Plaintiff Burgos in the June 7, 2010, *Dando Candela* program were false. He also stated how these ill-intended comments had affected him and Plaintiff Burgos, who refused to come out of the hotel room during the honeymoon for fear that she might be recognized. Plaintiff Torres further expressed how these malicious comments were affecting their marriage, that was just beginning, and all the suffering and mental anguish that they needed to overcome.[3]

 19. Apparently not satisfied with all they damage already caused to Plaintiffs, the next day, on the June 9, 2010 *Dando Candela* program, Mr. Harold Rosario continued to attack

---

[3] Attached as Exhibit B is the complete translation of the transcript of the pertinent parts of the June 8, 2010, Superexclusivo program, which is included by reference pursuant to Fed. R. Civ. P. 10(c).

Plaintiffs with vicious and false comments. The malicious and defamatory comments on the June 9, 2010 program included, among others, the following[4]:

    a.    "*And most of all… the great number of people who have confirmed to us that while she was a minor you had a godfather relationship with her and that apparently you protected her, because it seems as if she was like your godchild.*" *See* **Exhibit C**, Certified Translation of the Transcript of the pertinent parts of the June 9, 2010 program, page 4, lines 19-22.

20.    Plaintiffs respectfully request that this Honorable Court take judicial notice of the June 9, 2010, *Dando Candela* program, pursuant to Fed. R. Evd. 201.

21.    Again, apparently not having sufficiently hurt and destroyed Plaintiffs' reputation, the June 15, 2010, *Dando Candela* program continued its malicious attacks on Plaintiffs. The malicious and defamatory comments on the June 15, 2010 program included, among others, the following[5]:

    a.    "*Before we start, Leo, they are telling me that people are leaving the church, yes its true.*" *See* **Exhibit D**, Certified Translation of the Transcript of the pertinent parts of the June 15, 2010 program, page 2, lines 14-15.

    b.    "*Look at the cake, what a cake, seven levels. The cake has a symbol, they allege it is one level per year of the relationship.*" *See* **Exhibit D**, page 3, lines 12-13.

22.    Plaintiffs respectfully request that this Honorable Court take judicial notice of the June 15, 2010, *Dando Candela* program, pursuant to Fed. R. Evd. 201.

---

[4] Attached as Exhibit C is the complete translation of the transcript of the pertinent parts of the June 7, 2010 program, which is included by reference pursuant to Fed. R. Civ. P. 10(c).

[5] Attached as Exhibit D is the complete translation of the transcript of the pertinent parts of the June 15, 2010 program, which is included by reference pursuant to Fed. R. Civ. P. 10(c).

8

23. The character assassination continued. On July 21, 2010, *Dando Candela* included the following malicious and defamatory comments[6]:

    a. "*Is that the mannequin or the wife? No, this is the wife. Look at that, she looks very pretty. Well. Remember that you told a story, right? Yes, Yes. Well it's her*" See **Exhibit E**, Certified Translation of the Transcript of the pertinent parts of the June 21, 2010 program, page 3, lines 2-10.

24. The defamatory comments of the *Dando Candela* program are egregiously false and subjected Plaintiffs to public hatred and contempt. In summary, the defamatory comments state, among other things, that Plaintiff Torres fell in love with Plaintiff Burgos when she was nine years old; that prior to the wedding, they had been in a relationship of seven years (i.e., the seven layers of the cake), that is, since Plaintiff Burgos was twelve (12) years old. The comments further state that as a young girl, of nine years of age, Plaintiff Burgos's parents gave Plaintiff Burgos to Plaintiff Torres. The comments further state that Plaintiffs had been living together for many years before they got married, and that Plaintiff Burgos was pregnant at time of the wedding. All these statements are blatantly false.

## PLAINTIFFS SEEK DECLARATORY JUDGMENT

25. All averments and allegations in paragraphs 1 to 24 are incorporated by reference as if fully set forth herein.

26. Title 28 U.S.C. § 2201 provides that "[i]n a case of actual controversy within its jurisdiction, …, any court of the United States, upon the filing of the appropriate pleading may declare the rights and other legal relations of any interested party seeking such declaration,

---

[6] Attached as Exhibit E is the complete translation of the transcript of the pertinent parts of the June 21, 2010 program, which is included by reference pursuant to Fed. R. Civ. P. 10(c).

whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *See* 28 U.S.C. § 2201.

27.     The Bill of Rights of the Constitution of the Commonwealth of Puerto Rico provides that "*Every person has the right to the protection of law against abusive attack on his honor, reputation and private or family life*."  *See* P.R. Const. Art. II § 8.  As a constitutional right, a person's right to self-image and against abusive attacks operates *ex propio vigore*.  Notwithstanding, since under Puerto Rico law, a cause of action for slander and defamation is also statutory, based on the Libel and Slander Act of 1902 and Article 1802 of the Puerto Rico Civil Code, actions seeking redress for violations of this Constitutional provision have been treated as a regular tort action, placing the burden on the plaintiffs (whose constitutional rights have been violated) to establish the negligence or malicious intent regarding the publication of the defamatory expressions.

28.     This, in essence, creates a presumption in favor of the person who violated the constitutional provisions and against a plaintiff, whose Constitutional right were violated.  This renders Section 8 of the Bill of Rights of the Constitution of Puerto Rico ineffective and repealed, *de facto*.

29.     Logic mandates that a presumption should not favor person who effectively violated another person's constitutional rights.

30.     It is a well established principle in the evolution of our constitutional system of justice that on repeated occasions Supreme Court of different States of the Union, as well as the U.S. Supreme Court have created a shifting of presumptions through jurisprudence as a means of rectifying unjust applications of the law.  *See PPD v. Administrador* 111 D.P.R.  199 (1981)

31. The Supreme Court of Puerto Rico has not ruled on this issue. Therefore, we alert this Honorable Court that certification to the Puerto Rico Supreme Court might be warranted.

32. Given the above, Plaintiffs very respectfully request from this Honorable Court a declaratory judgment, declaring that in order to defeat Plaintiffs' cause of action for slander and defamation, Defendants have the burden to establish that the defaming comments of the *Dando Candela* program against Plaintiffs were not broadcast with negligence or actual malice (applicable to Plaintiff Torres if he was to be considered a public figure).

## FIRST CAUSE OF ACTION:
## SLANDER, SLANDER *PER SE*, AND DEFAMATION

33. All averments and allegations in paragraphs 1 to 32 are incorporated by reference as if fully set forth herein.

34. In Puerto Rico, a cause of action for slander and defamation has three sources: (1) the Bill of Rights of the Constitution of the Commonwealth of Puerto Rico; the Libel and Slander Act of 1902; and Article 1802 of the Puerto Rico Civil Code.

35. Plaintiff Torres and Plaintiff Burgos are not public figures, they are private persons. Therefore, the applicable standard to establish their cause of action against Defendants is that the defaming comments were negligently broadcasted.

36. Plaintiffs reiterate that Plaintiff Torres is not a public figure since he is not involved in political or public discourse, and does not appear or host any television or radio programs regarding public opinion. As the principal Reverend of his Church, he is well known within his religious congregation, but such popularity does not reach other communities or to the general public. In the alternative that Plaintiff Torres was considered a public figure, he would have to establish that defendants acted with the knowledge that the information was false or with reckless disregard for the truthfulness of the information (actual malice).

11

37.     The content of the defamatory and injurious expressions in the *Dando Candela* program accused Plaintiff Torres of having committed various criminal offenses against his wife, Plaintiff Burgos, while implying that Plaintiff Burgos was a victim of child molestation, which was condoned or tolerated by her parents.

38.     The implied criminal offenses of the defamatory expressions include, sexual assault, established in Article 142 of the Puerto Rico Penal Code[7], and lewd acts, typified in Article 144 of the Puerto Rico Penal Code.[8]  Under Puerto Rico law, a person commits slander is he/she falsely imputes any person the commission of a crime.  *See* 32 P.R. Laws Ann.  §3143. The expressions against Plaintiffs constitute slander *per se*, thus there Plaintiffs do not need to establish negligence and/or actual malice.

39.     The statements, in their entirety, are blatantly false as they pertain to Plaintiffs Torres and Burgos.  The statements were false and broadcasted on prime time television, and heard on the air by thousands of viewers throughout the Commonwealth of Puerto Rico.  These statements were broadcasted with negligence and a reckless disregard for the truth.  Mr. Harold

---

[7] Article 142 of the Puerto Rico Penal Code provides were pertinent: "Any person who performs sexual penetration, whether vaginal, anal, oral-genital, digital or instrumental under any of the following circumstances shall incur a second degree felony:
  (a) When the victim has not attained the age of sixteen (16) years at the time of the commission of the crime;
  …
  (i) When the accused takes advantage of the trust placed on him/her by the victim because there is a relationship of superiority due to …, or because there is a relationship of religious belief leadership with the victim. … ." *See* 33 P.R. Laws Ann. § 4770.

[8] Article 144 provides where pertinent: "Any person who without the intention to consummate the crime of sexual assault described in Article 142 submits another person to an act that tends to awaken, excite or satisfy the sexual passion or desire of the accused, under any of the following circumstances herein below, shall incur in a third degree felony.
  (a) When the victim has not attained the age of sixteen (16) years at the time of the commission of the crime.
  …
  (i) When the accused takes advantage of the trust placed on him/her by the victim because there is a relationship of superiority due to …, or because there is a relationship of religious belief leadership with the victim. … ." *See* 33 P.R. Laws Ann. § 4772.

Rosario, Mr. Leo Fernández and all others involved in the broadcasting of the program failed to properly investigate and/or corroborate the information against Plaintiffs. Defendants had knowledge of the content of the expressions that would be broadcasted, and of the defamatory nature of the same, yet allowed and condoned its broadcasting, also with negligence recklessness and complete disregard for the truth and of the damaging effects that such comments would cause to Plaintiffs. Moreover, once the abusive attack and slander against Plaintiffs began, Defendants failed to exert any type diligence or action to stop and/or prevent the continuous abusive attacks and defamation against Plaintiffs.

40.    Defendants had full control, domination and tutelage and/or have assumed responsibility over issues regarding privacy considerations in their broadcasting, the broadcasting of libelous and defaming information of the *Dando Candela* program. Defendants allowed and endorsed these defamatory comments not only in the first program (of June 7, 2010), but also in the subsequent programs. Defendants further failed to supervise Telemundo and the persons responsible for the broadcasting of the *Dando Candela* program and with deliberate indifference allowed said program to curtail on the rights of the individuals.

41.    Mr. Harold Rosario and Leo Fernandez were aware of Plaintiff Torres's prominent position within the Church community and of the damaging effects the slanderous comments would cause to his reputation and credibility, affecting his trustworthiness and standing within his religious congregation; destroying what it had taken him almost a quarter of a century to build.

42.    The slanderous expressions against Plaintiffs were made with the intent to be broadcasted knowing that they were false, and with reckless disregard for its falsity, without any factual basis for the statement, and with the specific intent to cause substantial injury to the

Plaintiffs' reputation. The broadcasting of the slanderous expressions was made with such negligence and reckless disregard for the truth, and with such intent constitutes the type of actual malice that gives ground to the present causes of action.

43. The defaming comments are the proximate cause of Plaintiff Torres damages. He has been accused of serious crimes, which have tarnished his reputation and the trust of his religious congregation. It took Plaintiff Torres almost a quarter of a century to build and strengthen his Church. Now, as a direct result of the *Dando Candela* comments, Plaintiffs' reputation has been shredded to pieces. As a result of the slanderous and defamatory comments, many Church goers have left the Church. Plaintiff Torres will now have to spend several years rebuilding his reputation, honor and the trust within his community.

44. The defaming comments have also harmed Plaintiff Torres in his family relationship with his wife and his wife's family.

45. The defaming comments are the proximate cause of Plaintiff Burgos damages. Right after her wedding and during her honeymoon, which is supposed to be one of the happiest moments in a person's life, her reputation and self-image were destroyed. On national television she was called a "*stolen and covered pig,*" who had been in a romantic relationship with an older man since she was nine years old, who her parents had turned over as property to the man who is now her husband. These comments devastated Plaintiff Burgos. She was constantly anxious and was unable to leave her house for various weeks for fear of what people would comment in the streets.

46. Plaintiffs have endured shame, embarrassment, and humiliation as a direct result of the false, slanderous, and defamatory expressions. Plaintiffs are and will in the future continue to be seriously injured regarding their good name and reputation. They will always be

looked upon as the couple whose parents (Plaintiff Burgos' parents) gave the girl (Plaintiff Burgos) for the man (Plaintiff Torres) to abuse.  As a result of Defendants actions, Plaintiffs are exposed to the hatred, contempt and ridicule of the general public and of the parishioners.  The broadcasting of the statements in the various *Dando Candela* programs constitute slander, slander *per se*, and defamation.

47. The information disseminated on the *Dando Candela* program is blatantly false, injurious, defamatory, insulting and with clear and manifested disregard for the truth.  It was distributed through television, one of the most effective and widespread means of communication, with the specific purpose of defaming and destroying Plaintiffs' reputation, honor, and dignity, and to attack Plaintiffs' private and family life.

48. Defendants NBC and Comcast, as the entities responsible for establishing and implementing the policies regarding privacy considerations and the broadcasting of libelous and defaming information, are liable for their own actions and inaction with regards to the broadcasting of the defamatory comments against Plaintiffs.  Defendants failed to exercise due care and prudence to stop and prevent the broadcasting of slanderous and defamatory comments.  Defendants allowed the continuous attacks against Defendants.

49. Defendants NBC and Comcast are also responsible for the actions and inactions of its subsidiary, Telemundo, for broadcasting the defaming comments against plaintiffs.  Defendants exert control and domination over its subsidiary, Telemundo, with regards to privacy considerations and the broadcasting of libelous and defaming information.  Telemundo's broadcasting of the defamatory comments against Plaintiffs make Defendants NBC and Comcast jointly and severally liable.

50. Furthermore Defendants, as owners of the Federal Communications Commission (FCC) license, or owners of the owner of the of the FCC license of WKAQ-Channel 2 which airs the *Dando Candela* program, are responsible for the broadcasting of said channel.

## SECOND CAUSE OF ACTION:
## DAMAGES UNDER ART. 1802 OF THE PUERTO RICO CIVIL CODE

51. All averments and allegations in paragraphs 1 to 50 are incorporated by reference as if fully set forth herein.

52. Article 1802 of the Puerto Rico Civil Code provides where pertinent that "[a] person who by act or omissions cause damages to another through fault or negligence shall be obligated to repair the damage so done." *See* 31 P.R. Laws Ann. § 5141.

53. Plaintiffs suffered damages as a result of Defendants' negligence and reckless disregard for the truthfulness of the information broadcasted in the *Dando Candela* program and the actual malice with which such information was broadcasted throughout Puerto Rico, some parts of the United States and the whole world through the internet.

54. Plaintiff Torres's personal relationship with his wife, his family, and religious congregation have been damaged, his honeymoon was ruined, and has suffered mental anguish, insomnia, and depression as a result of Defendants' actions. He has had to seek help and treatment as a result of Defendants actions.

55. Defendants are liable for the damages suffered by Plaintiff Torres, which are estimated at no less than $500,000.00. This amount will continue to increase on a daily basis until Defendants rectify the false and defamatory information and apologize for their reckless and destructive broadcasting practice.

56. Plaintiff Burgos's personal relationship with her husband and her parents and sister have been damaged, her honeymoon was ruined, she constantly crying during the

honeymoon and unable to leave the hotel room for fear of what people would say. Plaintiff Burgos has suffered mental anguish, insomnia, and depression as a direct result of Defendants' actions. She has had to seek help and treatment as a direct result of Defendants actions.

57. Defendants are liable for the damages suffered by Plaintiff Burgos, which are estimated at no less than $500,000.00. This amount will continue to increase on a daily basis until Defendants rectify the false and defamatory information and apologize for their reckless and destructive broadcasting practice.

## PRAYER FOR RELIEF

Plaintiffs respectfully requests that this Honorable Court take notice of the above stated issue the Declaratory Judgment requested herein and GRANT the instant complaint.

In addition to the above, Plaintiffs respectfully request that this Honorable Court impose interests, costs, and attorney fees on Defendants, and exercise its discretion to grant Plaintiffs any other equitable or statutory relief and/or remedy which may be deemed just and proper under the specific circumstances of this case.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico this 17th day of August 2010.

          **CASTELLANOS & CASTELLANOS LAW FIRM**
          161 Calle San Jorge
          Suite # 401
          San Juan, PR  00911
          Tel. (787) 641-8447
          Fax.  (787) 641-84161

          /s/ Alfredo A. Castellanos
          ALFREDO A. CASTELLANOS
          USDC-PR 208005

          /s/ Yvonne M. Menéndez
          YVONNE M. MENÉNDEZ
          USDC-PR 217705